**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 20-2431 & 23-1291

ANGELO RESCIGNO, SR., Executor of the Estate of Cheryl B. Canfield

v.

STATOIL USA ONSHORE PROPERTIES, INC.;
STATOIL NATURAL GAS, LLC; STATOIL ASA

*ALAN MARBAKER; CAROL MARBAKER,
JERRY L. CAVALIER; FRANK K. HOLDREN,

Appellants in No. 20-2431

MARTHA ADAMS and all others OBJECTORS,

Appellant in No. 23-1291

(*Pursuant to Fed. R. App. P. Rule 12(a))

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 3-16-cv-00085)
District Judge: Honorable Malachy E. Mannion

Submitted under Third Circuit L.A.R. 34.1(a)
on March 11, 2024

Before: BIBAS, MONTGOMERY-REEVES and ROTH, <u>Circuit Judges</u>

(Opinion filed: September 20, 2024)

OPINION[*]

ROTH, <u>Circuit Judge</u>

Statoil USA (Statoil) entered a class settlement with 13,000 natural gas leaseholders, resolving disputes over royalties owed to the leaseholders. The District Court approved the class settlement over the objections of a small number of the leaseholders. The objecting leaseholders appeal the court's orders (1) denying their motion to intervene and (2) certifying the class and approving the settlement. We will dismiss the appeal of the former for lack of jurisdiction and affirm the latter.

I.[1]

Statoil acquired a percentage of natural gas leaseholders' interests in natural gas and sold those interests to its affiliate, Statoil Natural Gas (SNG), for a neutral, third-party "index price."[2] The leases, which require Statoil to pay royalties to the leaseholders, are divided into two camps: the Index Price Leases and the Gross Proceed Leases.[3] The Index Price Leases, which make up the majority of the leases, require Statoil to use the index price to calculate the royalties. By contrast, the Gross Proceed Leases require Statoil to

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We write primarily for the parties and recite only the facts essential to our decision.

[2] This is a price published in an industry-standard publication specific to natural gas.

[3] The District Court found that any variation among these leases is "immaterial." JA0099.

pay a royalty based on the gross proceeds paid to SNG, which usually yields a higher royalty.

In 2016, an Index Price Leaseholder, Angelo Rescigno, filed a putative class action against Statoil, challenging the index price methodology that Statoil had used to calculate his royalties. The District Court dismissed all but one of his claims against Statoil: an alleged violation of an implied duty to market. The parties reached a class settlement for which it sought preliminary approval from the District Court. They also sought the appointment of Rescigno and two Gross-Proceeds Leaseholders (Donald and Mary Stine) as class representatives.

The settlement resolved disputes regarding royalty calculations for approximately 13,000 Index Price and Gross Proceeds Leaseholders.[4] Under the settlement, Statoil agreed to create a settlement fund of $7 million. In exchange, the class members agreed to release all claims against Statoil that relate to Statoil's methodology for calculating royalties

---

[4] The class settlement covers "Royalty Owners in Northern Pennsylvania who have entered into oil and gas leases, regardless of the type of lease, that provide that the Royalty Owner is to be paid Royalties and to whom Statoil has (or had) an obligation to pay Royalties on production attributable to Statoil's working interest." JA0460. "'Royalty Owner' means any person who owns a Royalty interest in the Relevant Leases and is entitled to receive payment on such Royalty from Statoil." JA0468. "'Relevant Leases' means each and every oil and gas leases in Northern Pennsylvania owned in whole or part by Statoil from which Statoil produces and sells Natural Gas and pays a Royalty to Royalty Owners." JA0467. The District Court found that the class includes those persons who currently have leases with Statoil and who were or are entitled to a royalty payment.

through the settlement's effective date.[5]  Although most class members' leases contained a mandatory arbitration clause, Statoil agreed to forego its right to compel arbitration.[6]

Appellants' counsel has repeatedly tried to thwart the settlement.  Before Rescigno filed suit, a group of four Gross-Proceeds Leaseholders represented by Appellants' counsel simultaneously filed an arbitration to challenge the index price methodology[7] and an action in federal court, *Marbaker v. Statoil USA Onshore Props.*, seeking a declaration that they could bring the arbitration as a class.[8]  The arbitration and *Marbaker* cases were stayed while the parties engaged in an ultimately unsuccessful mediation.  After counsel for the four Gross-Proceeds Leaseholders learned of Rescigno's suit, he reached out to Rescigno's counsel and asked if they could work together on the case.  Rescigno's counsel declined the invitation.

In March 2018, after the parties in *Rescigno* sought preliminary approval of the class settlement, the four Gross-Proceeds Leaseholders in *Marbaker* moved to consolidate their case with Rescigno's.[9]  The *Marbaker* District Court denied consolidation, and we affirmed on the ground that the Gross-Proceeds Leaseholders should have moved to intervene

---

[5] The Settlement states that Gross-Proceeds Leaseholders, who comprise 7% of the class, are set to receive 18% of the settlement fund ($1,339 per person); and Index Price Leaseholders, who comprise 93% of the class, are set to receive 82% of the settlement fund ($459 per person).  The settling parties agree that these amounts are proportional and proper given the strength of their respective claims.  The settlement also provides clarity for calculating royalties going forward.

[6] Rescigno's lease did not contain an arbitration provision.

[7] *Marbaker v. Statoil USA Onshore Props. Inc.*, No. 01-15-0003-1072 (AAA).

[8] No. 15-cv-00700 (M.D. Pa. Apr. 9, 2015).

[9] *Marbaker v. Statoil USA Onshore Props. Inc.*, No. 3:17-cv-1528 (M.D. Pa. Sept. 12, 2018).

instead.[10]   The *Marbaker* District Court subsequently dismissed the Gross-Proceeds Leaseholders' claims, holding that their leases did not allow for class-wide arbitration.[11]

In April 2018, counsel for the *Marbaker* Gross-Proceeds Leaseholders formed a group of twenty-three entities and individuals and objected to preliminary approval of the settlement in *Rescigno*.[12]   The District Court struck that filing because those entities were not properly before the court.   The court also concluded that if they did "not wish to be bound by [the class settlement], they may simply opt out of the class."[13]

In March 2020, the four Gross-Proceeds Leaseholders moved to intervene (Intervenors), and the District Court rejected the motion as untimely.[14]   The District Court also held that Intervenors were adequately represented in the class.   Intervenors appealed. This is one of the two appeals currently before this Court.

In July 2020, the District Court preliminarily approved the class settlement and appointed Rescigno and the Stines as class representatives.   Shortly thereafter, settlement notices were mailed to class members.   In September 2020, Rescigno moved for final

---

[10] *Marbaker v. Statoil USA Onshore Props. Inc.*, 2018 WL 2981341, at *3, n.4 (M.D. Pa. June 14, 2018); *Marbaker v. Statoil USA Onshore Props. Inc.*, 801 F. App'x 56, 62 (3d Cir. 2020).

[11] *Marbaker v. Statoil USA Onshore Props. Inc.*, 2018 WL 4354522, at *6–9 (M.D. Pa. Sept. 12, 2018).

[12] Around this time, Appellants' counsel brought several other claims against Statoil.  *See e.g.*, *Kuffa v. Statoil USA Onshore Props.*, No. 01-17-005-6012 (AAA); *Lake Carey Invs. LLC v. Statoil USA Onshore Props.*, No. 01-0007-3491 (AAA); *Lasher v. Equinor USA*, No. 2017-00595 CP (Pa. C.P.); *Chambers v. Chesapeake Appalachia*, No. 18-cv-00437 (M.D. Pa.).  Appellants' counsel has been successful in only one of these cases, and even there, the arbitration costs dramatically exceeded the damages awarded.

[13] JA0023

[14] Intervenors inexplicably waited three years to seek intervention, ignoring warnings from the *Marbaker* District Court and this Court.

approval of the settlement. A month later, a group of roughly 145 leaseholders, represented by Appellants' counsel and including Intervenors, objected to the settlement (Objectors).

In January 2023, the District Court granted final approval of the class settlement. Objectors then moved for reconsideration, arguing for the first time that the court lacked Article III jurisdiction to approve the settlement under *TransUnion LLC v. Ramirez*.[15] The court denied that motion. Objectors now appeal the District Court's order approving the settlement, which is the second appeal before us.

## II.

Intervenors contend that the District Court erred in denying their motion to intervene. Objectors argue that the District Court erred in certifying the class and approving the settlement in *Rescigno* because (1) the District Court lacked Article III jurisdiction to approve the class settlement; and (2) the court "failed in its fiduciary duty to the class in approving the settlement because the settling parties failed to provide evidence to support class certification and failed to prove that the settlement is fair, reasonable, and adequate."[16] We will address each appeal in turn.

## A.

We do not have subject matter jurisdiction of the appeal brought by Intervenors because the District Court's order denying intervention is neither a final order within the meaning of 28 U.S.C. § 1291 nor immediately appealable as a collateral order.[17]

---

[15] 594 U.S. 413 (2021).

[16] Objectors' Br 32.

[17] It is not a final order because it does not resolve the merits of the case. *See Carlough v. Amchem Prods., Inc.*, 5 F.3d 707, 713 (3d Cir. 1993).

6

In *Carlough v. Amchem Products, Inc*, we held that "anyone who is involved in an action sufficiently to have a right of appeal from its final disposition does not have an immediate right of appeal from a denial or partial denial of intervention."[18]  As in *Carlough*, Intervenors here "retain[ed] substantial rights of participation in the lawsuit as objecting class members,"[19] and have a right to appeal from the final disposition. The proper avenue to voice their claims to the court would be to make an objection at the final fairness hearing or to appeal the final approval of the class settlement.[20]  Intervenors attempt to distinguish *Carlough* on the grounds that the proposed intervenors in that case sought only to object to the proposed settlement, whereas Intervenors sought to bring a claim on the merits.  But that is an irrelevant distinction.  The relevant inquiry when determining whether an order denying intervention is final depends on whether the participation of the proposed intervenor ends entirely.

Thus, we will dismiss Intervenor's appeal and turn to Objectors' appeal.

## B. [21]

### i.

Objectors first argue that the class does not have standing because, under *TransUnion*, each class member must show injury.[22]  Objectors argue that the settlement

---

[18] *Id.* at 712–13.

[19] *Id.* at 713.

[20] *See id.*

[21] The District Court had jurisdiction under 29 U.S.C. § 1332(d)(2).  We have jurisdiction under 28 U.S.C. § 1291.

[22] We review whether the District Court had subject matter jurisdiction over this litigation (and power to approve the settlement) de novo. *Edmonson v. Lincoln Nat'l Ins. Co.*, 725 F.3d 406, 414 (3d Cir. 2013).

parties have not done so because the settlement might include individuals who are only "potentially" owed royalties. We disagree.

The District Court correctly found that the class contains only those persons who currently hold a lease with Statoil and who were or are owed a royalty.[23] Objectors fail to identify a single member of the settlement class that has yet to be injured. Moreover, Objectors misconstrue *TransUnion*. In *TransUnion*, the Supreme Court held that only a plaintiff who is concretely harmed by a defendant's violation of the Fair Credit Reporting Act has Article III standing to bring a claim under that statute.[24] The Court distinguished consumers whose inaccurate reports were disclosed to third-parties and consumers whose credit files contained inaccuracies but were not disclosed.[25] It reasoned that the former group had a "personal stake" in the controversy and therefore had standing, while the latter group could not show concrete harm and therefore did not have standing. [26]

---

[23] JA0116.
[24] *TransUnion LLC*, 594 U.S. 413.
[25] *Id.* at 432–39.
[26] *Id.* at 423.

Here, there is no dispute that the alleged injuries—breach of contract, breach of common-law duty, and underpayments—suffice to establish Article III standing. Put differently, class members alleging a breach of contract and resulting damages satisfies the "personal-stake" test.[27] Moreover, in the context of a class settlement, the "standing inquiry focuses solely on the class representative(s)."[28] And, again, Objectors do not dispute that the class representatives have standing.

## ii.

Objectors next argue that the District Court abused its discretion when it certified the class.[29] We disagree. There are four threshold requirements for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[30] In a Rule 23(b)(3) class action, courts also consider "whether (1) common questions

---

[27] *TransUnion* itself characterized monetary harms as one of "[t]he most obvious" Article III injuries. *Id.* at 425.

[28] *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018). *TransUnion* did not abrogate this basic tenet of class action litigation. Objectors cite our recent decisions in *Huber* and *Lewis*, but neither supports their position that the class lacks standing. *See* Objectors' Not. of Supp. Auth. (Feb. 21, 2024) (citing *Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023)); Objectors' Not. of Supp. Auth. (Apr. 17, 2024) (citing *Lewis v. GEICO*, 98 F.4th 452 (3d Cir. 2024)). In *Huber*, we vacated the district court's orders certifying the class because there was insufficient evidence to show how many members have standing. But *Huber* delt with common law fraud, where plaintiffs must show detrimental action or inaction. This case is about breach of contract and alleged underpayments based on the use of an index price methodology that applied to all members. In *Lewis*, we noted that "standing is not dispensed in gross." 98 F.4th at 459. But we nonetheless made clear that "[i]n a class action, the class's standing turns on the named plaintiffs' standing." *Id.*

[29] We review a District Court's decision to certify a class for an abuse of discretion. *In re Nat'l Football League Players Concussion Injury Litig. (NFL)*, 821 F.3d 410, 426 (3d Cir. 2016).

[30] Fed. R. Civ. P. 23(a); *see also NFL*, 821 F.3d at 426.

predominate over any questions affecting only individual class members (predominance) and (2) class resolution is superior to other available methods to decide the controversy (superiority)."[31] The District Court found that each of these factors were met. It did not abuse its discretion by doing so.

Objectors raise three arguments against class certification. First, they argue that the court abused its discretion in certifying the class because the class is "overbroad." Second, they argue that not every class members' lease forms are in the record. And third, they argue that Rescigno is an inadequate class representative.[32] We address each argument in turn, rejecting all three.

Objectors maintain that the class is overbroad because it includes anyone who "entered into" a lease in the past, but some class members may no longer currently hold the lease.[33] We disagree. The plain language of the class definition states that it applies to "Royalty Owners . . . who have entered into oil and gas leases . . . that provide that the Royalty Owner is to be paid Royalties and to whom Statoil has (or had) an obligation to pay Royalties."[34] "Royalty Owner" is defined as "any person who owns a Royalty interest in the Relevant Leases and is entitled to receive payment on such Royalty from Statoil."[35]

---

[31] *NFL*, 821 F.3d at 426.
[32] Objectors' Br. 37.
[33] Objectors' Br. 39–42.
[34] JA0460.
[35] JA0468.

The District Court accordingly found that the class is limited to "those currently holding a lease."[36] That class is not overbroad.

Objectors assert that the court abused its discretion in certifying the class because not every one of the lease forms are in the record. This argument is similarly unpersuasive. The District Court reviewed extensive documentation, including a detailed report that made reasonably clear that any difference in the leases was immaterial and did not have to do with differences in the applied index price methodology. Thus, the court was justified when it found that "[t]he variations in the lease language are immaterial in light of the fact that the question of [Statoil's] liability [for using the index price] is central to all class members and is subject to generalized proof."[37]

Objectors' argument that Rescigno is an inadequate class representative also fails.[38] Objectors insist that the "named plaintiff had no index price method claim."[39] But this is not so. The District Court held that Rescigno could not challenge the Index Prices

---

[36] JA0115. Objectors also contend the class is overbroad because it does not have a class period. This argument is unavailing. The class is limited by the date when Statoil switched to using the index price methodology.

[37] JA0099; *see NFL*, 821 F.3d at 426–27 (holding that commonality is satisfied if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class"). In fact, Appellants' counsel even alleged that the leases were "materially uniform documents containing standard provisions." Compl. ¶ 25, ECF No. 1, *Marbaker*, 15-cv-700 (Apr. 9, 2015).

[38] We also reject Objectors' argument that the Stines should not have been able to be class representatives. They did not need to be named in the complaint in order to serve as class representatives. Moreover, Objectors' assertion that Rescigno's counsel was inadequate because he was "unwilling to pursue claims in arbitration" fails because nothing in the record supports the theory that individual arbitration was a better option for class members.

[39] Objectors' Br. 41.

Methodology as a breach of contract, but it also held that Rescigno stated a claim that the Index Price Methodology violated an implied duty to market. That suffices.

In sum, the District Court did not abuse its discretion, and class certification in this case was proper.

### iii.

Finally, Objectors argue that the District Court abused its discretion in granting final approval of the settlement because the settling parties failed to prove that the settlement was "fair, reasonable, and adequate."[40] Again, we disagree.

The decision to approve a class settlement "is left to the sound discretion of the district court."[41] There is also a "strong presumption in favor of voluntary settlement agreements" that "promote the amicable resolution of disputes," conserve judicial resources, and benefit the parties by "avoiding the costs and risks of a lengthy and complex trial."[42] "This presumption is especially strong in class actions."[43]

A class settlement is presumed fair where (1) negotiations were at arms' length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.[44] The District Court properly found that all four factors were met.

---

[40] *NFL*, 821 F.3d at 436.
[41] *Id.*
[42] *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010).
[43] *Id.* at 595.
[44] *Id.*

Objectors seem to only dispute that the class settlement was negotiated at arms' length. We agree with the District Court that "class counsel has vigorously litigated this case at arms' length [in] investigating the potential claims, responding to two motions to dismiss, reviewing what they represent to be thousands of documents in discovery, and retaining experts to assist and verify data."[45] Indeed, before settlement, the parties engaged in extensive briefing, which resulted in a 73-page decision from the District Court that narrowed the issues in this case. We conclude that the settlement is entitled to a presumption of fairness.

Next, we evaluate whether the settlement was fair and adequate under the nine factors established in *Girsh v. Jepson*.[46] Those factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[47]

The District Court thoroughly considered each factor and found that, "[i]n light of the complexity of this case and the potential obstacles to establishing liability and damages," the settlement was reasonable.[48]

---

[45] JA0065. We reject Plaintiffs' argument that the District Court erred in denying their motion to compel discovery.
[46] 521 F.2d 153 (3d Cir. 1975).
[47] *Id.* at 157. This is not an exhaustive list. *See NFL*, 821 F.3d at 437.
[48] JA0087.

Objectors primarily argue that District Court improperly disfavored arbitration, as shown by its acknowledgement that the class members' arbitration agreements posed challenges to recovery. Not so. The court acted entirely within its bounds when it simply noted that most class members were unlikely to achieve any relief without the settlement.[49] Ultimately, our review of the record leads us to conclude that the District Court exercised its discretion soundly when it approved the class settlement.

CONCLUSION

For these reasons, we will dismiss, for lack of jurisdiction, the Intervenors' appeal (20-2431), and affirm the District Court's order granting Rescigno's motion for final approval of the settlement and plan of allocation (23-1291).

---

[49] As the District Court noted, most of the class signed agreements that do not allow for class arbitration, which meant that most of the class would have to arbitrate claims individually. Those arbitrations would require individualized expert testimony on numerous concepts (*e.g.*, marketability of the gas at specific wells and post-production deduction calculations) and ultimately would result in small recoveries. Moreover, each plaintiff would bear the costs of arbitration. Thus, the District Court did not improperly "disfavor" arbitration in its analysis. *See NFL*, 821 F.3d at 440 (considering the class' arbitration agreements in concluding that "the settlement represents a fair deal for the class when compared with a risk-adjusted estimate of the value of plaintiffs' claims.").

14